

**FILED**
10/26/2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ILLINOIS, *ex rel.* JEFFERY GRAY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation; UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; UHIC, a business entity, form unknown; UNITEDHEALTH GROUP, a business entity, form unknown; UNITEDHEALTHCARE, a business entity, form unknown; UNITEDHEALTH, a business entity, form unknown,<br><br>Defendants. | CASE NO.: 15 CV 7137<br><br>Chief Judge Castillo<br>Mag. Judge Cox<br><br>FIRST AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND ILLINOIS FALSE CLAIMS ACT;  REQUEST FOR JURY TRIAL<br><br>[**UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)] |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff and Qui Tam Relator Jeffery Gray, on behalf of the United States of America and the State of Illinois, and alleges against the defendants as follows:

### Jurisdiction and Venue

1.      Plaintiff and Qui Tam Relator Jeffery Gray (Relator) files this action on behalf and in the name of the United States Government (Government) seeking damages and civil penalties against the defendants for violations of 31 U.S.C. § 3729(a)(1).  Relator also files

-1-

this action on behalf and in the name of the State of Illinois ("Illinois") seeking damages and civil penalties against the defendants for violations of the Illinois False Claims Act, 740 ILCS 175/1, *et seq.*

2. This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a)(1) is based upon 31 U.S.C. § 3732(a). This Court's jurisdiction over the claims for violations of the Illinois False Claims Act is based upon 31 U.S.C. § 3732(b) and/or 28 U.S.C. § 1367(a).

3. Venue is vested in this Court under 31 U.S.C. § 3732(a) because at least one of the defendants transacts business in the Northern District of Illinois and/or many acts constituting violations of 31 U.S.C. § 3729(a)(1) occurred in the Northern District of Illinois.

<u>The Parties</u>

4. Relator is a citizen of the United States and a resident of the State of Illinois. Relator brings this action on behalf of the Government under 31 U.S.C. § 3730(b), and on behalf of Illinois under 740 ILCS 175/4(b). Relator is a retired, former employee of the State of Illinois.

5. At all times relevant, the Government funded the Medicare program which provides payment of healthcare services for, among others, those 65 years or older. The Government provides a Medicare option known as Medicare Advantage, previously known as Medicare+Choice, in which eligible Medicare beneficiaries can enroll with a managed care organization (MCO) contracted with the Government for a capitated rate paid by the Government that provides at least those services provided to standard Medicare beneficiaries.

6.     Defendant United Healthcare Insurance Company is and was a corporation formed under the laws of the State of Connecticut, and transacted business in, among other places, the Northern District of Illinois.   Defendant United Healthcare Services, Inc. is and was a corporation formed under the laws of the State of Minnesota, and transacted business in, among other places, the Northern District of Illinois.  Defendants UHIC, UnitedHealth Group, UnitedHealthcare, and UnitedHealth are business entities, form unknown, that transacted business in, among other places, the Northern District of Illinois.  All defendants referenced in this paragraph are collectively referred in this Complaint as "UHC."

7.     At all times relevant, UHC was and is contracted with the Government as a Medicare Advantage MCO.

8.     Between early 2014 and the present, Relator was and is a Medicare Advantage beneficiary enrolled with and covered by UHC's Medicare Advantage plan.

<u>Risk Adjustment</u>

9.     At all times relevant, Section 1853(a)(3) of the Social Security Act [42 U.S.C. § 1395w-23(a)(3)] required the Government's Centers for Medicare and Medicaid Services (CMS) to risk adjust payments to Medicare Advantage organizations, such as UHC.  In general, the risk adjustment methodology relies on enrollee diagnoses, as specified by the International Classification of Disease, Ninth Revision Clinical Modification (ICD-9) guidelines, to prospectively adjust capitation payments for a given enrollee based on the health status of the enrollee.  Diagnosis codes (ICD-9 codes) submitted by Medicare Advantage MCOs, such as UHC, to CMS are used to develop Hierarchical Condition

Category (HCC)[1] risk adjustment scores that are used by the Government to adjust the capitated payment rates paid by the Government to that particular Medicare Advantage MCO. Higher risk adjustment scores resulting from patients with more severe illnesses than normal result in higher capitation rates to compensate the Medicare Advantage MCO for assuming the risk of higher medical care costs for such patients. Likewise, lower risk adjustment scores resulting from patients with less severe (or no) illnesses than normal result in lower capitation rates in recognition that the Medicare Advantage MCO assumes a lower risk of medical care costs for such patients. When no diagnosis codes are provided to CMS for a Medicare Advantage patient for a given year, the result is that CMS assigns that patient the lowest HCC risk adjustment score, resulting in a reduction in the capitation rate paid by CMS for such patient. By risk adjusting Medicare Advantage MCO payments, CMS attempts to make appropriate and accurate payments for enrollees with differences in expected healthcare costs. Risk adjustment data records the health status and demographic characteristics of an enrollee.

10. Risk adjustment data (RAD) is all data used in the development and application of CMS's risk adjustment payment model, including diagnosis codes. 42 C.F.R. § 422.310(a). As a Medicare Advantage MCO, UHC must collect and submit to CMS such RAD from its contracted healthcare providers in connection with covered services rendered to UHC's Medicare Advantage beneficiaries. 42 C.F.R. § 422.310(b)-(c). Such covered

---

[1]Not all diagnoses result in a higher HCC risk adjustment score. Only certain diagnosis codes or combinations thereof result in higher HCC risk adjustment scores. An HCC risk adjustment score will vary upon the diagnosis codes or combinations thereof according to a matrix determined by CMS.

services are those covered under original fee-for-service Medicare and "[o]ther additional or supplemental benefits that [UHC] may provide." 42. C.F.R. § 422.310(c). Such "other additional and supplemental benefits" are covered under UHC's Medicare Advantage plan if they were approved by CMS in advance of the calendar year such benefits are provided to ensure, among other things, that the benefits conform to Medicare's fee-for-service guidelines. 42 C.F.R. §§422.2, 422.101(a), (c) & (f), 422.254(a). "MA organizations must submit data that conform to CMS' requirements for data equivalent to Medicare fee-for-service data, when appropriate, and to all relevant national standards...." 42 C.F.R. §§ 422.310(d), 422.101(b)(1)-(2).

11.     UHC can only submit RAD to CMS that was obtained from the provision of covered benefits.

UHC's Kickback Offers and Payments

12.     Since at least 2012, UHC conceived and operated a fraudulent scheme of offering and paying kickbacks to its Medicare Advantage patients to induce such patients to utilize UHC's in-home examination services, a service not covered under its Medicare Advantage health plan, in order for UHC to obtain risk adjustment data to prospectively increase CMS's payments to UHC under UHC's Medicare Advantage contracts.

13.     During or about early 2014, Relator became a UHC Medicare Advantage beneficiary.

14.     During or about November 2014, UHC sent a letter to Relator advising that UHC had an in-home examination program called "HouseCalls" that would send a licensed

healthcare practitioner to its Medicare Advantage beneficiaries' homes to conduct in-home physical examinations. The in-home examination was not a part of the annual wellness visit covered under the UHC Medicare Advantage health plan.

15.     Initially, Relator declined to utilize UHC's HouseCalls services. Subsequently, UHC contacted Relator via a telemarketing service and offered to provide him with a $25 Walmart gift card if he would utilize UHC's HouseCalls in-home examination services. UHC's $25 Walmart gift card offer was not presented until after Relator initially declined UHC's HouseCalls services. After initially declining the telemarketer's offer, Relator reconsidered and agreed to accept UHC's offer.

16.     On April 13, 2015, Relator underwent a UHC HouseCalls in-home examination conducted by a UHC nurse practitioner. At the time of the in-home examination, Relator did not have a certification from his treating physician that such services are medically warranted, nor at any time did UHC ask Relator if he had such a certification. Relator was clothed during the in-home examination and was not asked to disrobe.

17.     On or about April 22, 2015, UHC mailed a $25 Walmart gift card to Relator advising that it was a "reward for completing your 2015 HouseCalls visit."

18.     UHC offered its Medicare Advantage beneficiaries in the form of gift cards of up to $25 to induce UHC's Medicare Advantage beneficiaries to utilize UHC's HouseCalls in-home examination services.

19.     Relator is informed and believes, and upon such information and belief alleges, that since at least 2012, UHC has been offering and/or paying its Medicare Advantage

beneficiaries remuneration of up to $25 in the form of gift cards to agree to and/or utilize UHC's HouseCalls in-home examination services.

In-Home Medical Examinations

20.     Medical examinations at a Medicare beneficiary's residence in lieu of having the encounter at the healthcare provider's office are not covered under original fee-for-service Medicare unless there existed a certification from the beneficiary's treating physician that such services are medically warranted, e.g. the beneficiary is confined to his/her residence.   See, Social Security Act §§ 1835(a)(2)(B) [42 U.S.C. § 1395n(a)(2)(B)], 1862(a)(1)(A)(2)  [42 U.S.C. § 1395y]; 42 C.F.R. §§ 424.22(a), 410.80, 409.42(a)(c), 422.101(b)(1)-(2); and Medicare Policy Benefit Manual, Ch. 15, § 60.4.1.  Likewise, such in-home examinations are not covered under the beneficiary's Medicare Advantage health plan unless (a) they are covered under original fee-for-service Medicare, i.e., there existed a certification from the beneficiary's treating physician that such services are medically warranted, or (b) such in-home examinations are covered as CMS-approved Supplemental Benefits to the beneficiary's Medicare Advantage health plan. See, 42 C.F.R. §§ 422.100(a), 422.101(b), 422.254(a); Medicare Managed Care Manual, Ch. 4 §§ 10.2, 30.1, et seq., 90.1 See also, 42 C.F.R. §§ 409.42(a)-(c); Medicare Claims Processing Manual, Ch. 7 § 30; Medicare Managed Care Manual, Ch. 13 § 40.2.2.; CMS February 211, 2014 Advance Notice of Methodological Changes for Calendar Year (CY) 2015 for Medicare Advantage (MA) Capitation Rates, Part C and Part D Payment Policies and 2015 Call Letter, p. 110.

21.     Relator's UHC HouseCalls in-home examination was not a covered benefit

under his UHC Medicare Advantage health plan because (a) at the time of the HouseCalls in-home examination, Relator's treating physician had not certified Relator as being medically warranted to receive an in-home examination, and (b) in-home examinations were not covered as a CMS-approved Supplemental Benefit under the UHC Medicare Advantage health plan.

Reward and Incentive Programs

22.     Effective May 23, 2014, 42 C.F.R. § 422.134 permits Medicare Advantage MCOs to have reward and incentive programs (RI programs) that provide rewards and incentives to Medicare Advantage enrollees that meet the requirements of a valid RI program under that regulation.  In order for a RI program to meet the requirements of 42 C.F.R. § 422.134, the RI program must, among other things, (a) be marketed in conjunction with the marketing of benefits covered under the MCO's Medicare Advantage health plan, CMS December 4, 2014 Rewards and Incentives Program Guidance, as made applicable by 42 C.F.R. §§ 422.134(c)(iv) and 422.752(a)(11) and (c), (b) be designed so that all enrollees are able to earn the offered rewards and incentives, 42 C.F.R. § 422.134(b)(2), (c) promote efficient use of health care resources, 42 C.F.R. § 422.134(a), and (d) otherwise comply with all relevant fraud and abuse laws, including, when applicable, the Anti-Kickback Statute and civil money penalty provisions prohibiting inducements to Medicare Advantage beneficiaries.  42 C.F.R. § 422.134(c)(1)(iv).  An MCO's RI program that does not satisfy all of the these requirements is subject to the Anti-Kickback Statute.  42 C.F.R. § 422.134(c)(1)(iv).

-8-

23.    Defendants' program to offer and provide gift cards to induce Medicare Advantage enrollees to undergo in-home examinations is not a valid RI program, and thus is subject to the Anti-Kickback Statute, because it does not meet all of the above-mentioned requirements:

    i.    UHC's HouseCalls gift card program promotes services that are not covered under the UHC Medicare Advantage health plan because (a) such in-home examinations were performed on Medicare Advantage beneficiaries who were not medically certified to require in-home medical services, and (b) such in-home examinations were not covered as a CMS-approved Supplemental Benefit to the UHC Medicare Advantage health plan.

    ii.    UHC's HouseCalls gift card program was not designed so that all enrollees were able to earn the offered gift card. For instance, UHC offered the gift card to Relator only after he initially declined to undergo a UHC HouseCalls in-home examination. Further, Relator is informed and believes and upon such information and belief alleges that UHC only offered HouseCalls gift cards for in-home examinations to those UHC Medicare Advantage beneficiaries like Relator who had not yet been seen by his primary care physician that year.

    iii.    The HouseCalls gift card program promotes an inefficient, rather than an efficient, use of healthcare resources by promoting inferior

uncovered services (in-home examinations) that attempt to duplicate covered annual wellness visits at a physician's office, and thus discourage the use of annual wellness visits. Annual wellness visits are required to be covered under original Medicare and Medicare Advantage health plans in order to ensure that patients are regularly seen by their primary care physician to identify potentially serious medical conditions and promote the efficient use of healthcare resources. The HouseCalls in-home examination, a non-covered service, is inferior to an annual wellness visit at a physician's office because, among other reasons, unlike annual wellness visit examinations, the HouseCalls in-home examinations are performed without the beneficiary disrobing, thus impairing the in-home examiner's ability to conduct a physical examination of the beneficiary and use of a stethoscope to accurately measure heart rate and detect lung and heart abnormalities. The promotion and performance of such non-covered in-home examinations discourages in-home examined beneficiaries from seeking another examination through a covered annual wellness visit.

<u>The Anti-Kickback Statute</u>

24.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)(B), makes it illegal for UHC to offer or pay "any remuneration . . . in cash or in kind to any person to induce such

person . . . to . . . . order . . . any . . . service . . . for which payment may be made in whole or in part under a Federal health care program."

25.     UHC's offer and provision of gift cards to its Medicare Advantage beneficiaries, such as Relator, for utilizing UHC's HouseCalls in-home examination services conducted by UHC medical examiners are prohibited by 42 U.S.C. § 1320a-7b(b)(2)(B) because such remuneration is intended to induce, and/or does induce, UHC's Medicare Advantage beneficiaries to utilize UHC's HouseCalls in-home examination services which are paid for in whole or in part under UHC's Medicare Advantage contract with CMS.

26.     UHC offered and provided the gift cards to its Medicare Advantage beneficiaries to induce them to utilize UHC's HouseCalls in-home examination services so that UHC could generate ICD-9 (diagnosis) codes from such in-home examinations and submit such diagnosis codes to CMS, thus increasing such examined Medicare Advantage beneficiaries' risk adjustment scores and resulting in CMS's increased capitated payments to UHC in connection with such beneficiaries.  Each such ICD-9 diagnosis code submitted to CMS constitutes a claim, or a record or statement material to a claim, to CMS for payment because each such diagnosis code was intended to increase the examined patients' HCC risk adjustment scores, and thus increase CMS's capitated payments to UHC.

27.     Further, as a condition of receiving payments from CMS, Defendants requested payments under its Medicare Advantage contracts at least annually by submitting to CMS certifications required under 42 C.F.R. §§ 422.504(*l*) and (*l*)(3), 422.310(c) and (d)  stating that based on "best knowledge, information, and belief" that the accuracy of the submitted

diagnosis codes requested by CMS were accurate, complete and truthful, and that such services were covered. Each of these certifications were knowingly false because UHC knew that the HouseCalls in-home examinations were not covered under its Medicare Advantage health plan and the resulting diagnosis codes should not have been submitted to CMS because (a) the vast majority of its in-home examined beneficiaries were not certified as being medically warranted to receive an in-home examination, (b) such in-home examinations were not a CMS-approved Supplemental Benefit to UHC's Medicare Advantage health plan, and (c) only diagnosis codes resulting from covered services are to be submitted to CMS for risk adjustment. 42 C.F.R. § 422.310(c) & (d); Medicare Managed Care Manual, Ch. 7 § 120.1.1; 2008 Risk Adjustment Data Technical Assistance Resource Guide, p. 17.

28. By violating 42 U.S.C. § 1320a-7b(b)(2)(B) and submitting the resulting diagnosis codes and certifications to CMS, 42 U.S.C. § 1320a-7b(g) provides that UHC's submission of the diagnosis codes arising from the HouseCalls in-home physical examinations and certification to CMS constitute "false or fraudulent claim[s] for payment or approval" for purposes of 31 U.S.C. § 3729(a)(1)(A), and/or "false record[s] or statement[s] material to a false or fraudulent claim" for purposes of 31 U.S.C. § 3729(a)(1)(B). Accordingly, CMS overpaid UHC to the extent CMS paid inflated payments to UHC that were based upon diagnosis codes UHC obtained through its HouseCalls in-home examinations.

29. 42 C.F.R. § 422.326 makes it a violation of the False Claims Act, 31 U.S.C.

-12-

§§ 3729, et seq., for a Medicare Advantage health plan, such as UHC, to retain an overpayment for more than 60 days. At all times relevant, UHC was aware that it utilized the subject illegal kickback scheme to induce its Medicare Advantage beneficiaries to utilize the HouseCalls in-home examination services so that UHC could obtain and submit the resulting diagnosis codes to CMS and obtain inflated capitated overpayments from CMS.

### FIRST CLAIM FOR RELIEF

(Violations of 31 U.S.C. § 3729(a)(1) against all defendants re: in-home examinations)

30.    Relator realleges and incorporates by reference all previous paragraphs of this complaint as though fully set forth at length.

31.    At all times mentioned, defendants routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by:

    i.    Knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent claims for payment and approval;

    ii.    Knowingly making, using, and/or causing to make or use false records and statements to get false and excessive claims paid or approved by Medicare;

    iii.    Conspiring among themselves to violate 31 U.S.C. § 3729(a)(1)(A) and/or (B); and

    iv.    Knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or

> property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the Government.

32. Relator is informed and believes, and upon such information and belief alleges, that as a result of defendants' fraudulent misconduct, the Government was damaged in excess of $1,000,000.

33. As a result of defendants' conduct, UHC is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent claims alleged above.

34. As a result of defendants' conduct, 31 U.S.C. § 3729(a) provides that defendants are liable to the Government for civil penalties between $5,000 and $10,000, as adjusted by 28 U.S.C. § 2461, for each such false and fraudulent claim for payment.

35. Relator is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).

SECOND CLAIM FOR RELIEF

(Violations of 740 ILCS 175/3 against all defendants)

36. Relator realleges and incorporates by reference all previous paragraphs of this complaint as though fully set forth at length.

37. Since about early 2014, Relator has been and is a Medicare Advantage beneficiary enrolled with and covered by UHC's Medicare Advantage plan for Medicare-eligible retired employees (and their Medicare-eligible spouses) of the State of Illinois.

-14-

38.     Relator is informed and believes, and upon such information and belief alleges, that Illinois paid, and continues to pay, UHC to provide benefits under UHC's Medicare Advantage plan for Medicare-eligible retired employees (and their Medicare-eligible spouses) of the State of Illinois.

39.     Relator is informed and believes, and upon such information and belief alleges, that during or about 2013, Illinois entered into a contract with UHC to provide Illinois' Medicare-eligible retired employees and their Medicare-eligible spouses with supplemental benefits under UHC's Medicare Advantage plan that are in addition to those benefits covered under a standard Medicare Advantage plan. Relator is informed and believes, and upon such information and belief alleges, that Illinois agreed to pay, and is paying, UHC amounts based upon, among other things, diagnosis codes obtained from the HouseCalls in-home examinations, and UHC's estimate of expenses to provide such services to such beneficiaries, which expenses include UHC's kickback expenses, costs of providing services performed in connection with UHC's kickback scheme, and costs of providing services not covered under UHC's Medicare Advantage plan for Medicare-eligible retired employees (and their Medicare-eligible spouses) of the State of Illinois. Accordingly, UHC knowingly induced Illinois to fund and pay, among other things, UHC's kickbacks, i.e., the cost of the gift cards, and the costs for the non-covered UHC HouseCalls in-home examinations, which Illinois would not have paid had Illinois known that UHC's HouseCalls gift card program resulted in the provision of kickbacks in violation of the Anti-Kickback Statute and the provision of non-covered in-home services.

40.     As a result of UHC's kickbacks and/or provision of non-covered in-home examinations, the costs of such services, and resulting inflated risk adjustment scores and inflated capitated rates, the amounts UHC charged to Illinois towards UHC's Medicare Advantage plan for Medicare-eligible retired employees (and their Medicare-eligible spouses) of the State of Illinois were false and fraudulent, resulting in Illinois overpaying UHC.

41.     At all times mentioned, defendants routinely and repeatedly violated 740 ILCS 175/3(a) by:

     i.     Knowingly presenting and/or causing to present to Illinois false and fraudulent claims for payment or approval;

     ii.     Knowingly making, using, and/or causing to make or use false records and statements material to a false or fraudulent claim;

     iii.     Conspiring among themselves to violate 740 ILCS 175/3(a)(1)(A), (B) and/or (G); and

     iv.     Knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to Illinois, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to Illinois.

42.     Relator is informed and believes, and upon such information and belief alleges, that as a result of defendants' fraudulent misconduct, Illinois was damaged in excess of

$1,000,000.

43.    As a result of defendants' conduct, UHC is liable to Illinois for three times the amount of damages sustained by Illinois as a result of the false and fraudulent claims alleged above.

44.    As a result of defendants' conduct, 740 ILCS 175/3(a)(1) provides that defendants are liable to Illinois for civil penalties between $5,500 and $11,000 for each such false and fraudulent claim for payment.

45.    Relator is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to 740 ILCS 175/4(d).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Qui Tam Relator prays for relief as follows:

FOR THE FIRST CLAIM FOR RELIEF

1.    Treble the Government's damages according to proof;

2.    Civil penalties according to proof;

3.    A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

FOR THE SECOND CLAIM FOR RELIEF

4.    Treble Illinois' damages according to proof;

5.    Civil penalties according to proof;

6.    A relator's award of up to 30% of the amounts recovered by or on behalf of Illinois;

-17-

FOR ALL CLAIMS FOR RELIEF

7.      Attorneys fees, expenses, and costs; and

8.      Such other and further relief as the Court deems just and proper.

REQUEST FOR JURY TRIAL

Plaintiff and Qui Tam Relator hereby requests a trial by jury.

                              Respectfully submitted,

Dated: October 26, 2016

                              _____
                              Michael Behn
                              One of the Attorneys for Plaintiff-Relator,
                              Jeffery Gray

William K. Hanagami
THE HANAGAMI LAW FIRM, A.P.C.
5950 Canoga Avenue, Suite 130
Woodland Hills, CA 91367-5035
(818) 716-8570
(818) 716-8569 *FAX*
BillHanagami@Esquire.LA

Abram J. Zinberg
THE ZINBERG LAW FIRM, A.P.C.
412 Olive Avenue, Suite 528
Huntington Beach, CA 92648-5142
(714) 374-9802
(714) 969-0910 *FAX*
AbramZinberg@gmail.com

Michael Behn
BEHN & WYETZNER, CHARTERED
828 Davis Street, Suite 303
Evanston, Illinois 60201
(312) 629-0000
(224) 420-3172 *FAX*
MBehn@BehnWyetzner.com