# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | ) | |
| STATE OF ILLINOIS, | ) | |
| ex rel. JEFFERY GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-7137 |
| | ) | |
| UNITEDHEALTHCARE INSURANCE | ) | Judge Thomas M. Durkin |
| COMPANY; UNITED HEALTHCARE | ) | |
| SERVICES, INC.; UHIC; | ) | |
| UNITEDHEALTHCARE, INC.; | ) | |
| and UNITEDHEALTH | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Relator Jeffery Gray brought this action against United seeking damages and civil penalties for violations of the False Claims Act (Count I) and the Illinois False Claims Act (Count II). On June 12, 2018, the Court granted United's motion to dismiss the operative second amended complaint but allowed Gray to file a motion for leave to amend his complaint. R. 66. The Court assumes familiarity with that decision. Before the Court now is Gray's motion for leave to file a third amended complaint. R. 67. United opposes that motion. For the following reasons, Gray's motion is denied and this action is dismissed with prejudice.

## ANALYSIS

In the Court's June 12, 2018 order granting United's motion to dismiss, the Court outlined significant overarching issues with Gray's complaint. Specifically, the Court explained that CMS has stated that it will not exclude, for payment purposes,

diagnoses obtained through in-home examinations. Gray also failed to identify any regulations United violated in submitting data obtained from in-home examinations to CMS. As a result, the Court held that Gray failed to allege that United's actions violated a material funding requirement, precluding his False Claims Act claim.

The third amended complaint does not cure these deficiencies. Gray merely repeats his allegations and rehashes his arguments with more detail, relying on the same statutes and CMS call letters that the Court already held are insufficient to plead his False Claims Act claim. *See, e.g.*, R. 67-2 ¶¶ 31-39 (repeating allegations regarding the "additional benefits" language in 42 C.F.R. § 422.310(c), which the Court rejected in its earlier opinion). Gray still fails to identify any material funding requirement that United has violated by offering in-home examinations and submitting that data to CMS for use in the following year's capitation payment analysis. He also fails to offer any indication CMS has reconsidered its explicit decision to use data from in-home examinations in its calculations.[1] Finally, the fundamental flaw in Gray's complaint remains—Gray fails to distinguish between traditional fee-for-service Medicare and Medicare Advantage and the different costs to the government. *See, e.g., id.* ¶¶ 16, 38, 63-66 (referring to requirements for payment of claims that may be considered false claims under traditional Medicare, but not Medicare Advantage, because of the different ways those programs are

---

[1] CMS has not issued a call letter since this Court's previous opinion. The most recent call letter confirmed that CMS is continuing to monitor Medicare Advantage plans' use of in-home assessments to ensure that they are meaningful and effective for beneficiaries' clinical conditions. *See* R. 66 at 13 n.6.

administered); ¶¶ 43-52 (again alleging the "submission of claims for payment for medically unnecessary services constitutes a fraud upon the government," which the Court rejected for Medicare Advantage plans because those plans do not submit claims for services in the same way as traditional Medicare). Those allegations are not materially different from the allegations in Gray's prior complaint and so fail to state a claim for the reasons stated in the Court's prior opinion. Gray does make one new allegation, which the Court will address now.

**Rewards and Incentives Program.** In the third amended complaint, Gray expands on United's use of in-home examinations as part of the Medicare-allowed rewards and incentives program. CMS authorizes Medicare Advantage plans to "provide rewards and incentives to enrollees in connection with participation in activities that focus on promoting improved health, preventing injuries and illness, and promoting efficient use of health resources." 42 C.F.R. § 422.134(a). CMS recognized that to be effective, such incentives will necessarily be "of a value that may be expected to impact enrollee behavior." 42 C.F.R. § 422.134(c)(1)(iii). CMS "provides [a Medicare Advantage] organization with great flexibility in designing its own rewards and incentives program." Centers for Medicare & Medicaid Services, Medicare Program; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs, 79 Fed. Reg. 29,844, 29,917 (May 23, 2014). But CMS does impose certain restrictions on rewards and incentives programs. Specifically, Medicare Advantage programs may not discriminate against enrollees and the rewards cannot be offered in cash, must

3

be capped at a value determined by CMS, and must otherwise comply with all relevant laws, including the Anti-Kickback Statute. 42 C.F.R. § 422.134. In its previous opinion, the Court explained why United's in-home examinations and gift cards do not violate the Anti-Kickback Statute as they are currently administered. *See* R. 66 at 22-25.

In the third amended complaint, Gray alleges that United did not submit expenses related to its in-home examinations as a non-benefit expense of the rewards and incentives program, and as a result, its in-home examinations violate the Anti-Kickback Statute. *Id*. ¶ 71. Medicare Advantage plans are required to submit bids, and CMS may negotiate bids or decline to approve a bid if the plan sponsor proposes significant increases in cost sharing or decreases in benefits offered under the plan. *See* 42 C.F.R §§ 422.254(a); 422.256(a). Plans are also required to report on their rewards and incentives programs through their annual reporting requirements. MMCM, Ch. 4 § 100.7. That reporting requires plans to "document and track information regarding their RI Programs and be prepared to provide that information to CMS upon request." *Id*. Gray does not explain how he knows that United failed to submit in-home examination expenses in the bid. Gray also does not explain how a failure to submit those expenses violates the Anti-Kickback Statute. The Court does not see how it does—the purpose of the Anti-Kickback Statute is to prevent remunerations to induce individuals to purchase services for payment from a federal health care program. As the Court described in detail, United's use of in-home examinations does not induce payment from the federal government and there is no

indication the federal government is paying United anything for its in-home examinations. In any event, like Gray's other allegations, Gray fails to allege that the violation was material so that the government would refuse payment were it aware of the violation.

Gray also alleges that CMS specifically excluded the use of "health risk assessments" from services that Medicare Advantage plans could offer beneficiaries as a reward or incentive. *Id.* ¶ 70 (citing the 2019 Final Call Letter).[2] Gray argues that United's in-home examinations are "health risk assessments" and thus cannot be offered to beneficiaries under the rewards and incentives program. According to CMS, health risk assessments are "usually questionnaires sent to enrollees for self-completion and ask for basic information about physical, psychosocial, and functional needs." 2016 Final Call Letter at 144.[3] Not only are United's in-home examinations not "questionnaires sent to enrollees for self-completion" but Gray alleges that United's in-home visits do not even include health risk assessments. R. 67-2 ¶ 69(iii) (alleging that United's in-home assessments do not provide a health risk

---

[2] Announcement of Calendar Year (CY) 2019 Medicare Advantage Capitation Rates and Medicare Advantage and Part D Payment Policies and Final Call Letter 212 (April 2, 2018) ("2019 Final Call Letter"). *Available at* https://www.cms.gov/Medicare/Health-Plans/MedicareAdvtgSpecRateStats/ Downloads/Announcement2019.pdf.

[3] CMS previously prohibited rewards and incentives programs from encouraging completion of health risk assessments because of "the potential for biased responses due to the influence of rewards and incentives." 2019 Final Call Letter at 212. The 2019 Call Letter notably changes course and states that beginning in calendar year 2019, Medicare Advantage plans *may* "include the completion of [a health risk assessment] as a permitted health-related activity in an RI Program." *Id.*

assessment).[4] Because United's exams do not use the previously prohibited health risk assessments, Gray's argument that they subject it to liability fails.

**Leave to Amend.** Finally, Gray asks the Court to allow him to file another amended complaint to include allegations regarding a $75 gift card[5] United provided to its beneficiaries in violation of the Anti-Kickback Statute. R. 75 at 19. Gray does not make clear whether the gift card was provided as an inducement to complete the in-home examinations at issue or to complete separate annual wellness visits. Regardless, the Court already rejected Gray's argument in its previous opinion (regarding United's similar use of a $25 Walmart gift card). R. 66 at 22-25. Gray again states that the gift cards were intended to increase the utilization of Medicare services. But as the Court described in its opinion, increased services under Medicare

---

[4] In his reply, Gray attempts to walk back his allegation by arguing that the health risk assessments are annual wellness visits or Medicare covered initial preventative physical exams. R. 75 at 7. Gray's argument makes little sense because he then says that United's in-home exams are neither annual wellness visits nor preventative physical exams. *Id*. If they are neither, then they cannot violate the Anti-Kickback Statute under Gray's theory.

[5] To the extent Gray argues that the $75 gift card violates the Anti-Kickback Statute because it is over the "$15 max gift allowed," R. 75 at 19, that argument fails as well. The $15 limit Gray references relates to promotional activities "to attract the attention of prospective enrollees and/or encourage retention of current enrollees." Medicare Marketing Guidelines § 70.1 (issued June 10, 2016). Gray alleges the $75 gift card is part of United's rewards and incentives program, not that it is a promotional activity. Rewards under the rewards and incentives program can be capped by CMS, but CMS has not done so. Instead, CMS guidance states: "At this time, CMS has not identified the monetary values that exceed what is necessary to influence enrollee behavior. There is also no express limit on how often rewards and/or incentives may be offered to enrollees throughout a contract year. Instead, MA plans are to establish reasonable and appropriate values for rewards and/or incentives that comply with §422.134." MMCM, Ch. 4 § 100.4.

6

Advantage plans do not increase the utilization of Medicare services like traditional fee-for-service Medicare. R. 66 at 25. And in any event, the Court already found Gray's argument too speculative to plausibly allege a violation of the Anti-Kickback Statute. *Id*. at 23-24. Any further amendment of the complaint would be futile. Gray's request to file a fourth amended complaint is denied. *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club*, LLC, 870 F.3d 682, 693 (7th Cir. 2017) (leave need not be given when "amendment would be futile").

## CONCLUSION

For the foregoing reasons, Gray's motion for leave to file a third amended complaint, R. 67, is denied. The action is dismissed with prejudice.

ENTERED:

_Thomas M Durkin_

Dated: October 29, 2018

----------------------------------------

Honorable Thomas M. Durkin
United States District Judge